**Lillie D. BROWN and Lois N. Gomes, et al.**

v.

**COLEMAN INVESTMENTS, INC., et al.**

No. Civ.A. 96–3297–8–M2.

United States District Court, M.D. Louisiana.

Jan. 23, 1998.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Edelman & Combs, Chicago, IL, Garth Jonathan Ridge, Baton

Rouge, LA, Lillie D. Brown, for Lillie D. Brown.

Garth Jonathan Ridge, Baton Rouge, LA, for Lois N. Gomes, Marilyn Greene, Stephanie Greene, Willie Greene.

Kirk A. Patrick, III, McGlinchey Stafford Lang, Baton Rouge, LA, John Joseph Price, John O. Shirley & Associates, Baton Rouge, LA, for Coleman Investments, Inc., Robert Coleman.

Paul S. West, McGlinchey Stafford Lang, Baton Rouge, LA, Anthony Joseph Rollo, Jr., Michael H. Rubin, Lauren L. Zimmermann, McGlinchey Stafford Lang, New Orleans, LA, David S. Willenzik, McGlinchey Stafford Lang, New Orleans, LA, for Toyota Motor Credit Corporation.

Lloyd Eades Hogue, David Felicien Waguespack, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, LA, Patrick Johnson, Jr., Lemle & Kelleher, New Orleans, LA, for Hibernia National Bank.

## RULING ON TOYOTA MOTOR CREDIT CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS

POLOZOLA, District Judge.

This matter is before the Court on a motion for summary judgment and for judgment on the pleadings filed by Toyota Motor Credit Corporation ("TMCC"). Because the Court has referred and relied on the evidence outside of the pleadings in deciding this motion, the Court will treat the motion for judgment on the pleadings as a motion for summary judgment. For reasons which follow, TMCC's motion for summary judgment is GRANTED.

### FACTS & PROCEDURAL HISTORY

This suit was filed by Lillie D. Brown ("Brown") and Lois N. Gomes ("Gomes") against various defendants[1] under the Truth

---

1. The defendants in this action are Coleman Investments, Inc., d/b/a Coleman Toyota ("Coleman Toyota"), TMCC, Hibernia National Bank ("Hibernia"), Robert Coleman and Robert Coleman, Jr. The fictitious defendants named by the plaintiffs will be ignored by the Court.

in Lending Act[2] ("TILA"), the Racketeer Influenced and Corrupt Organizations Act[3] ("RICO") and Louisiana state law for "equitable restitution."[4] Brown has filed claims against TMCC, Coleman Toyota, Robert Coleman and Robert Coleman, Jr. Brown has filed no claims against Hibernia. Gomes has filed claims against Hibernia, Coleman Toyota, Robert Coleman and Robert Coleman, Jr. Since Gomes has filed no claims against TMCC, this ruling will address only claims asserted by Brown against TMCC. The Court now turns to a brief discussion of the facts of this case.

On or about July 22, 1995, Brown executed a retail installment contract with Coleman Toyota for the purchase of a 1994 Toyota Tercel. The Truth in Lending Disclosure statement prepared by Coleman Toyota disclosed an "amount financed"[5] of $13,157.52, a "finance charge"[6] of $3,487.08 and an "annual percentage rate"[7] of 9.50%. Included in the $13,157.52 "amount financed" was a $40 charge for a "license fee." The actual amount of the "license fee" charged by the State of Louisiana was $22.92. In addition, Coleman Toyota assessed Brown the $25 cost of ad valorem taxes owed by Coleman Toyota as a result of the sale. Brown's retail installment contract was assigned to TMCC as TMCC provided the financing for the vehicle.

Based upon the above facts, Brown has asserted the various claims listed above against TMCC. The Court now turns to a discussion of the legal principles the Court must follow in ruling on this motion for summary judgment and a discussion of the merits of the claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[8] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[10] "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[11]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[12] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[13] Factual controversies are to be

**2.** 15 U.S.C. § 1601, et seq.

**3.** 18 U.S.C. § 1961, et seq.

**4.** The plaintiffs filed a motion to certify this suit a class action lawsuit, but as of the date of this ruling, the Court has not ruled on this motion.

**5.** *See* 15 U.S.C. § 1638(a)(2) for definition of "amount financed."

**6.** *See* 15 U.S.C. § 1605(a) and 12 C.F.R. § 226.4(a) for definition of "finance charge."

**7.** *See* 15 U.S.C. § 1638(a)(4), 12 C.F.R. § 226.18(e) and 12 C.F.R. § 226.22 for discussion of the "annual percentage rate."

**8.** Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir.

1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

**9.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

**10.** *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553).

**11.** *Little*, 37 F.3d at 1075.

**12.** *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

**13.** *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[14] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[16]

When affidavits are used to support or oppose a motion for summary judgment, the affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."[17] Affidavits that are not based on personal knowledge or that are based merely on information and belief do not satisfy the requirements of Rule 56(e), and those portions of an affidavit that do not comply with Rule 56(e) are not entitled to any weight and cannot be considered in deciding a motion for summary judgment.[18] Neither shall conclusory affidavits suffice to create or negate a genuine issue of fact.[19]

## ANALYSIS

As noted above, Brown has filed various TILA claims, a RICO claim under 18 U.S.C. § 1962(c), and a claim for "equitable restitution" against TMCC. The Court will first address the various TILA claims.

### I. TILA Claims

Brown has alleged several violations of TILA in her complaint. It is clear that Coleman Toyota is primarily liable for any TILA violations, and TMCC is only secondarily liable. The Court will first analyze the merits of the alleged TILA violations. If the Court grants the motion for summary judgment based on the merits, then Coleman Toyota would not be primarily liable for the alleged violations of TILA, and TMCC, being only secondarily liable, would be "off the hook as well."[20]

### (I)(A) Substantive TILA Violations

Brown has alleged the following violations of TILA: (1) by charging $40 for a "license fee" that actually cost $22.92, Coleman Toyota understated the "finance charge" by $17.08, overstated the "amount financed" by $17.08 and understated the "annual percentage rate;" (2) Coleman Toyota failed to disclose the fact of or amount of the $17.08 upcharge; and (3) Coleman Toyota assessed Brown $25 for ad valorem taxes which were legally owed by Coleman Toyota thereby understating the "finance charge." The Court will analyze each of these claims.

### (I)(A)(1) Effects of the Alleged $17.08 Understatement of the "Finance Charge"

This claim centers on the characterization of a $40 "license fee" charged by Coleman Toyota. The "license fee" was actually $22.92. Brown contends Coleman Toyota violated TILA by including the $17.08 upcharge in the "amount financed," instead of the "finance charge." Following is a summary of the violations of TILA resulting from the alleged misclassification of the $17.08 upcharge:

a. Coleman Toyota understated the "finance charge" disclosed to Brown by

14. Id. Accord, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir.1996).

15. McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir.) (citing Little, 37 F.3d at 1075, as revised on denial of rehearing, 70 F.3d 26 (5th Cir.1995).)

16. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

17. Fed.R.Civ.P. 56(e); Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc., 993 F.2d 1178, 1182 (5th Cir.1993).

18. Richardson v. Oldham, 12 F.3d 1373, 1378–79 (5th Cir.1994).

19. McCallum Highlands, 66 F.3d at 92; Travelers Ins. Co. v. Liljeberg Enterprises, Inc., 7 F.3d 1203, 1207 (5th Cir.1993); Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir.1992) (citations omitted).

20. McGee v. Kerr–Hickman Chrysler Plymouth, 93 F.3d 380, 385 n. 9 (7th Cir.1996).

$17.08 in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d).

b. By understating the "finance charge," Coleman Toyota necessarily overstated the "amount financed" disclosed to Brown by $17.08 in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b).

c. Because the "finance charge" and the "amount financed" were understated and overstated, respectively, Coleman Toyota necessarily understated the "annual percentage rate" disclosed to Brown in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e).

■ TMCC contends the $17.08 upcharge is not a "finance charge" because the entire $40 charged for the "license fee" meets the comparable cash transaction exception to the definition of "finance charge."[21] The Court finds there are genuine issues of material fact in dispute which preclude summary judgment on the issue of whether the $40 "license fee" meets the comparable cash transaction exception to the definition of "fi-

nance charge." As such, TMCC's motion for summary judgment is denied on this issue.

(I)(A)(2) *Inaccurate Disclosure of a "License Fee"*

■ Brown also contends that the $40 "license fee" is an inaccurate disclosure, in violation of 15 U.S.C. § 1638((a)(2)(B)(iii),[22] 12 C.F.R. § 226.18(c)(1)(iii),[23] and 12 C.F.R. § 226.18(c)(2),[24] because Coleman Toyota failed to disclose the fact of or the amount of the $17.08 upcharge. The issues before the Court on this claim are whether: (1) under the above cited statute and regulations, Coleman Toyota must disclose the fact that an upcharge is included in the "license fee;" (2) Coleman Toyota must disclose the specific amount of the upcharge of $17.08; or (3) Coleman Toyota is required to disclose neither the fact of or amount of the upcharge. The record reveals that Coleman Toyota has not disclosed the fact of or the amount of the upcharge.

For the reasons set forth in the Court's "Ruling on Coleman Investment, Inc.'s and Robert Coleman's Motion for Summary Judgment and Judgment on the Pleadings,"[25] the Court grants TMCC's motion for

21. "Finance charge" is defined by 15 U.S.C. § 1605(a) of TILA as follows:

Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. *The finance charge does not include charges of a type payable in a comparable cash transaction ....* (Emphasis added.)

"Finance charge" is also defined by 12 C.F.R. § 226.4(a) of Regulation Z as follows:

The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. *It does not include any charge of a type payable in a comparable cash transaction.* (Emphasis added.)

22. 15 U.S.C. § 1638(a)(2)(B)(iii) provides as follows:

In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, *upon a written request*, a written itemization of the amount financed.... Upon receiving an

affirmative indication, the creditor shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed. For the purposes of this subparagraph, "itemization of the amount financed" means a disclosure of the following items, to the extent applicable: ... (iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person.... (emphasis added.)

23. 12 C.F.R. § 226.18(c)(1)(iii) states that "[f]or each transaction, the creditor shall disclose ... [a separate written itemization of the amount financed, including ... [a]ny amounts paid to other persons by the creditor on the consumer's behalf[, and] [t]he creditor shall identify those persons."

24. Similar to 15 U.S.C. § 1638(a)(2)(B), 12 C.F.R. § 226.18(c)(2) provides that the creditor need not disclose a separate written itemization of the amount financed if the creditor discloses to the consumer that the consumer has the right to obtain this separate written itemization, and the consumer declines to exercise this right.

25. 993 F.Supp. 439 (M.D.La.1998).

summary judgment on this issue. Since the Court has found that Coleman Toyota is not primarily liable for this TILA violation, TMCC is not secondarily liable for this alleged TILA violation.

### (I)(A)(3) *Disclosure of Ad Valorem Tax*

■ As stated above, Coleman Toyota assessed Brown the $25 cost of the ad valorem taxes owed by Coleman Toyota as a result of the sale. Coleman Toyota has a policy and practice of passing through to both cash and credit customers the amount of ad valorem taxes that Coleman Toyota is required to pay due to the sale of each vehicle.[26] Brown contends that Coleman Toyota's failure to disclose the $25 ad valorem tax as a "finance charge" violates 15 U.S.C. § 1638 of TILA and 12 C.F.R. § 226.18 of Regulation Z.

TMCC argues the $25 ad valorem tax is not a "finance charge" because it meets the comparable cash transaction exception set forth in 15 U.S.C. § 1605(a) of TILA and 12 C.F.R. § 226.4(a) of Regulation Z. The record reveals that Coleman Toyota's policy is to pass through the cost of ad valorem taxes to both cash and credit customers.[27] Brown has produced no evidence that cash customers are treated differently from credit customers in this regard. Therefore, the Court finds the $25 ad valorem tax passed through to Brown meets the comparable cash transaction exception to the definition of "finance charge." As such, the $25 ad valorem tax was properly excluded from the "finance charge" by Coleman Toyota. Since Coleman Toyota is not primarily liable for this alleged violation of TILA, TMCC is not secondarily liable as an assignee. Thus, the Court grants TMCC's motion for summary judgment on this issue.

### (I)(A)(4) *Conclusion—Substantive TILA Violations*

In summary, because there are genuine issues of material fact in dispute, the Court denies TMCC's motion for summary judgment on the issue of whether the "amount financed," "finance charge," and "annual percentage rate" disclosed to Brown were misstated due to the inclusion in the "amount financed" the $17.08 upcharge in the $40 "license fee." The Court grants TMCC's motion for summary judgment on the issue of whether the fact of or the amount of the $17.08 upcharge in the license fee must be disclosed to Brown. The Court also grants TMCC's motion for summary judgment on the issue of whether Coleman Toyota's practice of passing through the cost of ad valorem taxes to its customers is a violation of TILA.

### (I)(B) *Discussion of TMCC's Liability as an Assignee*

Brown asserts Coleman Toyota is liable under TILA for the failure to classify $17.08 of the $40 "license fee" charged to Brown as a "finance charge,"[28] for failing to disclose the fact of or the amount of the $17.08 upcharge in the $40 "license fee," and for failing to include the $25 ad valorem tax charged to Brown in the "finance charge." The Court has previously dismissed the claims concerning the failure to disclose the fact of or the amount of the upcharge in the "license fee" and the classification of the $25 ad valorem tax. Therefore, the Court will consider TMCC's secondary liability for the claim involving the failure to classify the $17.08 upcharge in the "license fee" as a "finance charge."

Brown contends TMCC is liable for this violation of TILA by Coleman Toyota based on two theories: (1) Brown contends TMCC is liable under 15 U.S.C. § 1641(a) as an assignee of the retail installment contract; and (2) Brown asserts the language in the retail installment contract assigned to TMCC subjects TMCC to TILA liability.

---

**26.** TMCC's Memorandum in Support of Motion for Summary Judgment ("TMCC's Memo"), Exhibit 4 (Affidavit of Julie Fields).

**27.** TMCC's Memo, Exhibit 4 (Affidavit of Julie Fields).

**28.** In the interest of brevity, when the Court refers to the alleged understatement of the "finance charge" by $17.08, the Court is also necessarily referring to the additional alleged TILA violations of the alleged overstatement of the "amount financed" by $17.08 and the alleged understatement of the "annual percentage rate."

(I)(B)(1) *15 U.S.C. § 1641(a)—Liability of Assignee*

15 U.S.C. § 1641(a) of TILA "establishes an objective test to determine the liability of an assignee and limits civil actions against an assignee of a creditor to those where the 'violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.' "[29] 15 U.S.C. § 1641(a) also provides the following:

> [f]or the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

"In general, courts addressing the issue of TILA assignee liability have found that § 1641(a) limits liability when there is no indication from the disclosure documents that liability may arise ."[30] The mere allegation that an assignee has general knowledge of the dealer's practice is not sufficient to find the assignee violated 15 U.S.C. § 1641(a).[31] Furthermore, if it is impossible to determine from the face of the disclosure documents who imposed the fees or required the services, an assignee is not liable under 15 U.S.C. § 1641(a).[32] In the unreported case of *Guilfoy v. Suncoast Sav. & Loan Ass'n*,[33] relied on by Brown, the court stated it is not necessary for an assignee to have "actual notice of a violation" to be liable under 15 U.S.C. § 1641(a), as long as the violation could be "gleaned from the documents...."[34]

Considering the above principles, the Court must determine whether it is "apparent" or whether it may be "gleaned" from the documents assigned to TMCC that the $40 "license fee" allegedly violated TILA because Coleman Toyota did not include the $17.08 upcharge in the "finance charge."

Brown contends it was apparent from the documents assigned to TMCC by Coleman Toyota that the above TILA violation existed. Brown also contends that, in addition to the retail installment contract, TMCC was assigned a copy of Brown's Vehicle Application. The retail installment contract listed a $40 "license fee," while the space next to "License" on the Vehicle Application was blank. Thus, Brown argues there was a discrepancy between the two forms. Based on this discrepancy, Brown avers that it was "apparent" and/or it could be "gleaned" from the discrepancy between the two forms that $17.08 of the $40 "license fee" should have been included in the "finance charge." The Court disagrees. This conflict between the documents does not make it "apparent" that $17.08 of the $40 is allegedly a "finance charge." Neither could this TILA violation be "gleaned" from this discrepancy.

Brown also contends TMCC is liable as an assignee because it had actual knowledge of the TILA violation. The actual knowledge theory of assignee liability is not set forth in TILA or Regulation Z. The actual knowledge theory is derived from case law. For instance, in *Ritter v. Durand Chevrolet*, the court stated the mere allegation of general knowledge is not sufficient for assignee liability.[35] In addition, the court in *McPhan v. Gibson Chevrolet* found "that the bare allegation of actual knowledge, unsupported by any factual assertions, fails to state a

**29.** *Smith v. Highland Bank*, 915 F.Supp. 281, 290 (N.D.Ala.1996) (quoting 15 U.S.C. § 1641(a)), *aff'd*, 108 F.3d 1325 (11th Cir.1997).

**30.** *Alexander v. Continental Motor Werks, Inc.*, 1996 WL 79403 (N.D.Ill. Feb.16, 1996) (citing *Johnson v. Fleet Finance, Inc.*, 785 F.Supp. 1003 (S.D.Ga.1992) and *Brodo v. Bankers Trust Co.*, 847 F.Supp. 353 (E.D.Pa.1994)).

**31.** *Ritter v. Durand Chevrolet*, 932 F.Supp. 32, 35 (D.Mass.1996).

**32.** *Smith*, 915 F.Supp. at 290.

**33.** 94cv1500 (S.D.Fla. Oct. 13, 1995) (Marcus, J.) (Brown's Memorandum in Opposition to TMCC's Motion for Summary Judgment ("Brown's Memo"), Appendix D).

**34.** *Guilfoy*, 94cv1500 at 18–20.

**35.** 932 F.Supp. at 35.

TILA claim."[36] Both of these cases suggest that an assignee with actual knowledge of a TILA violation may be liable under TILA.

The legal issue of whether an assignee, with actual knowledge of a TILA violation, is liable under TILA will not be addressed by this Court. However, as the Court did in its "Ruling on Motion for Summary Judgment filed by Chrysler Financial Corp." in *Turner v. II Diamond Motors,* ——F.Supp.——, 1998 WL 88559 (M.D.La.1998), the Court will assume, for the purposes of ruling on this motion, that an assignee, with actual knowledge of a TILA violation, can be held liable for a violation of TILA, even if the TILA violation is not "apparent" on or may not be "gleaned" from the face of the disclosure statement or other documents assigned.

Brown's evidence of TMCC's actual knowledge of the above TILA violation is based on the assertion that the amount of the "license fee" is set by virtue of the laws of the State of Louisiana, and since TMCC does business in Louisiana, TMCC is charged with such knowledge.[37] In other words, Brown argues the "license fee" is set by statute, and ignorance of the law by TMCC is no excuse. Thus, Brown would have this Court impute to TMCC actual knowledge of the amount of the "license fee."

As stated above, the "actual knowledge" theory of assignee liability under 15 U.S.C. § 1641(a) asserted by Brown is derived from case law. To resolve this motion for summary judgment, the Court will assume, but not decide, that an assignee with actual knowledge of a violation of TILA may be liable under TILA. Given this assumption, Brown has produced no evidence of actual knowledge on the part of TMCC. Instead, Brown produces evidence of "general knowledge" which was discounted by the court in *Ritter.*[38] Brown attempts to impute to TMCC knowledge of the alleged TILA violations by arguing TMCC is charged with knowledge of Louisiana law concerning the computation of a "license fee." Even if the Court adopts the actual knowledge standard put forth by Brown, actual knowledge does not encompass imputed knowledge. Thus, the Court finds that Brown has produced no evidence of TMCC's actual knowledge. The Court declines to impute such knowledge to TMCC.

In summary, the Court finds that TMCC is not liable as an assignee under 15 U.S.C. § 1641(a) for the alleged violations of TILA by Coleman Toyota.

(I)(B)(2) *FTC Holder Notice—Liability of TMCC*

■ In addition to 15 U.S.C. § 1641(a), Brown asserts TMCC is liable under the Federal Trade Commission Holder in Due Course Notice ("FTC Holder Notice") included in the retail installment contract between Brown and Coleman Toyota that was assigned to TMCC.[39] While there are many cases which hold that the FTC Holder Notice subjects an assignee to liability for violations of TILA by the seller of goods,[40] there are also many cases holding the opposite.[41] The Court believes the cases which find no liability based on the FTC Holder Notice are more

**36.** 1996 WL 685449 at 6 (N.D.Ill., Nov.25, 1996).

**37.** Brown's Memo at 22.

**38.** As stated above, the Ritter court stated that an allegation of general knowledge is not sufficient for assignee liability. Ritter, 932 F.Supp. at 35.

**39.** The FTC Holder Notice reads as follows:

NOTICE: ANY HOLDER OF THIS CONSUMER CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. See TMCC's Memo, Exhibit 1 (Brown's Retail Installment Contract attached to Affidavit of Joseph P. Agostini).

**40.** See the following cases: *Perry v. Household Retail Svcs., Inc.,* 953 F.Supp. 1370, 1376 (M.D.Ala.1996); *Cox v. First National Bank of Cincinnati,* 633 F.Supp. 236, 239 (S.D.Ohio 1986); *Fairman v. Schaumberg Toyota, Inc.,* 1996 WL 392224 at 7 (N.D.Ill. July 10, 1996).

**41.** See the following cases: *Alexander,* 1996 WL 79403 at 8–9; *Lindsey,* 1996 WL 411336 at 7; *Kinzel v. Southview Chevrolet Co.,* 892 F.Supp. 1211, 1217 (D.Minn.1995); *Vietnam Veterans of America, Inc. v. Guerdon Industries, Inc.,* 644 F.Supp. 951, 965 (D.Del.1986).

persuasive. For the reasons assigned in *Alexander v. Continental Motor Werks, Inc.*,[42] the Court holds the FTC Holder Notice does not subject TMCC to liability as an assignee for the alleged violation of TILA by Coleman Toyota.

### (I)(B)(3) *Conclusion—Assignee Liability*

In summary, the Court grants TMCC's motion for summary judgment on the remaining TILA claim because the Court finds the alleged TILA violation is not "apparent" and cannot be "gleaned" from the documents assigned to TMCC. In addition, assuming but not deciding that the actual knowledge theory of assignee liability exists under TILA, the Court finds that TMCC had no actual knowledge of the alleged TILA violation under the facts of this case. Finally, the Court finds the FTC Holder Notice in the retail installment contract does not give rise to TILA liability on behalf of TMCC.

### II. *RICO Claim*

Brown has also filed a RICO claim premised under 18 U.S.C. § 1962(c)[43] against TMCC. "In order to state a claim under 18 U.S.C. § 1962, a plaintiff must allege: 1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity."[44] In this case, Brown alleges the racketeering activity is the use of the mail and wires to "intentionally] inflat[e] ... fees listed as governmental fees on retail installment contracts for motor vehicles, with the intention of pocketing the difference between the fee charged to consumers and the actual fees submitted to the state of Louisiana ... for license fees."[45] According to Brown, the racketeering activity also includes the allegedly fraudulent scheme of passing through the cost of ad valorem taxes to consumers.

TMCC argues Brown's RICO claims should be dismissed for the following reasons: (A) failure to plead fraud with particularity in violation of Rule 9(b); (B) failure to properly plead an enterprise; and (C) TMCC lacks management or control of the enterprise. The Court now turns to an analysis of TMCC's arguments.

### (II)(A) *Rule 9(b)—Pleading Fraud With Particularity*

The predicate acts alleged by Brown are mail fraud and wire fraud. In order to state a claim for mail fraud under 18 U.S.C. § 1341, the following elements must be pled: (1) the defendant knowingly created a scheme to defraud; (2) the defendant acted with a specific intent to commit fraud; and (3) the defendant mailed something or caused another person to mail something, through the use of the United States Postal Service or any private or commercial interstate carrier, for the purpose of carrying out the scheme.[46] The elements of a claim for wire fraud under 18 U.S.C. § 1343 are the same as mail fraud, except the third element of wire fraud involves the use of interstate wire communications facilities instead of the mails.[47]

Since the predicate acts alleged by Brown are mail fraud and wire fraud, Brown must comply with Rule 9(b) which requires particularity in pleading the "circumstances constituting fraud." "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and

---

**42.** 1996 WL 79403 at 8–9 (N.D.Ill. Feb.16, 1996).

**43.** § 1962(c) provides the following:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**44.** *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989) (citing *Sedima S.P.R.L. v. Imrex Co.*, 473

U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)).

**45.** RICO Case Statement, No. 5.

**46.** Pattern Jury Instructions, Committee on Criminal Pattern Jury Instructions: District Judges Association Fifth Circuit, 18 U.S.C. § 1341, pp. 131–33 (1996).

**47.** Pattern Jury Instructions, Committee on Criminal Pattern Jury Instructions: District Judges Association Fifth Circuit, 18 U.S.C. § 1343, pp. 134–35 (1996).

what he obtained thereby.' "[48] In other words, "articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." [49] Considering the above principles, Brown must particularly plead the following elements of fraud: "1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury." [50] Rule 9(b) does allow "[a]llegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive to be made generally." [51]

■ Based on the above principles, Brown has failed to meet the particularity requirement of Rule 9(b).[52] Brown's Second Amended Complaint is devoid of any allegations of TMCC's intent to defraud. Furthermore, neither Brown's Second Amended Complaint nor her RICO Case Statement contains any allegations regarding the time, place or manner of specific actions taken by TMCC which furthered the alleged fraud. In her RICO Case Statement, Brown does allege Coleman Toyota committed fraud by intentionally inflating fees on retail installment contracts with the intention to pocket the difference and that TMCC knew about

this alleged plan.[53] Asserting that TMCC knew about the alleged plan is a far cry from the assertion that TMCC has the specific intent to commit fraud and then listing the specific actions undertaken by TMCC to further the fraud.

Moreover, Brown has failed to plead the specific actions committed by TMCC which were fraudulent. Based on the Second Amended Complaint and RICO Case Statement, all TMCC is alleged to have done is to fund loans and to accept the assignment of retail installment contracts with the general knowledge that "license fees" included an upcharge and that purchasers were being assessed the cost of ad valorem taxes. This allegation falls short of the particularity necessary to plead fraud under Rule 9(b).

(II)(B) *Pleading the Existence of an Enterprise*

■ "In order to avoid dismissal ..., a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise." [54] Under § 1962(c), plaintiffs must plead that "the defendant was employed by or associated with the alleged enterprise; that the defendant knowingly and willfully conducted or participated, directly, or indirectly, in the conduct of the affairs of the alleged enterprise; and that the defendant did so knowingly and willfully through a pattern of racketeering activity." [55] Since the defendant must be

---

**48.** *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir .1997); *also see Tel–Phonic Services, Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir.1992) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1297 at 590 (1990); *also see Keith v. Stoelting, Inc.,* 915 F.2d 996, 1000 (5th Cir. 1990)).

**49.** *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir.1997) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)).

**50.** *Williams,* 112 F.3d at 177 (citing *Cyrak v. Lemon,* 919 F.2d 320 (5th Cir.1990)).

**51.** *Tel–Phonic,* 975 F.2d at 1139.

**52.** Brown cites *Brister v. All Star Chevrolet, Inc.,* CA No. 96–3447 (M.D.La. Apr.24, 1997) (Berrigan, J.) (quoting *Boston & Maine Corp. v. Town of Hampton,* 987 F.2d 855, 866 (1st Cir.1993)) for the proposition that "[c]ourts are aware of

the difficulties in accumulating the information necessary to withstand a 9(b) motion and have recognized that 'when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion, less specificity of the pleading may be required pending discovery.' " In this case, Brown has neither alleged that the opposing party is the only practical source of the information necessary to withstand a Rule 9(b) motion nor has Brown asked for more time to complete discovery. In addition, the Brister case did not take into account the Fifth Circuit's opinion in *Williams v. WMX Technologies, Inc.,* 112 F.3d 175 (5th Cir.1997) which was decided the same day.

**53.** RICO Case Statement, No. 2 and 5.

**54.** *Elliott,* 867 F.2d at 881 (citations omitted).

**55.** Pattern Jury Instructions, Committee on Pattern Jury Instructions: District Judges Association Fifth Circuit, § 8.1, p. 90 (1996).

employed or associated with the alleged enterprise under § 1962(c), "the RICO 'person' must be distinct from the RICO enterprise." [56] In addition, the compensable injury to Brown must stem from a violation of § 1962(c), i.e., there must be a RICO injury.[57]

"A RICO 'enterprise' can be either a legal entity or an 'association in fact' enterprise." [58] "The enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.' "[59] In addition, an association in fact enterprise "must be an ongoing organization and [] its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." [60] "If a defendant is a legal entity, the plaintiffs must do more than merely establish that the corporation, through its agents, committed the predicate acts in the conduct of its own business." [61] Brown must also allege the "enterprise" engaged in, or the activities of the "enterprise" affect, interstate or foreign commerce.[62]

In this case, Brown alleges the existence of two separate enterprises. The first alleged enterprise is "[t]he corporate group which is headed by Toyota Motor Sales, U.S.A., Inc. [("TMS")], and which includes [TMCC] and numerous other corporations." [63] The first alleged enterprise will be referred to as the "TMS enterprise." The second alleged enterprise is the "association in fact of [TMCC], [TMS] and Coleman Toyota." [64] The second alleged enterprise will be referred to as the "vertical enterprise."

TMCC argues Brown has failed to properly plead the "TMS enterprise" and the "vertical enterprise" under RICO for the following reasons: (1) the alleged RICO person is not distinct from the alleged enterprise; and, (2) the pattern of racketeering activity is not separate and apart from the activity in which the alleged enterprise engages. The Court now turns to a discussion of the alleged enterprises.

### (II)(B)(1) *RICO Person Distinct from Enterprise*

As stated above, the RICO person must be distinct from the enterprise under § 1962(c). With regard to both enterprises listed above, TMCC argues Brown failed to plead the RICO person (TMCC) is distinct from each enterprise. The Court will first discuss the "TMS enterprise."

### (II)(B)(1)(a) *"TMS Enterprise"*

 TMS is the parent corporation, and TMCC is a subsidiary corporation of TMS. In order to properly plead an enterprise, Brown must plead facts showing how the parent corporation (TMS) played a role in the racketeering activity that is distinct from the acts of the subsidiary (TMCC).[65] In *Lorenz,* the Third Circuit held the following:

[I]t is ... theoretically possible for a parent corporation to be the defendant and its subsidiary to be the enterprise under section 1962(c). However, the plaintiff must plead facts which, if assumed to be true, would clearly show that the parent corporation played a role in the racketeering activity which is distinct from the activities of its subsidiary. A RICO claim under

**56.** *In Re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993) (citing *Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 123 (5th Cir.1986)). "[U]nder § 1962(a) and (b), 'enterprise' and 'person' may be the same and need not be separate and distinct." Pattern Jury Instructions, Committee on Pattern Jury Instructions: District Judges Association Fifth Circuit, § 8.1, pp. 89–90 n. 1 (1996) (citations omitted).

**57.** *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 584 (5th Cir.1992).

**58.** *Burzynski*, 989 F.2d at 743.

**59.** *Elliott*, 867 F.2d at 881 (citations omitted).

**60.** *Delta Truck & Tractor, Inc. v. J.I. Case Company*, 855 F.2d 241, 243 (5th Cir.1988) (citations omitted), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989).

**61.** *Elliott*, 867 F.2d at 881 (citations omitted).

**62.** § 1962(a) and (c).

**63.** RICO Case Statement, No. 6; *also see* Second Amended Complaint, ¶ 94(a).

**64.** RICO Case Statement, No. 6; *also see* Second Amended Complaint, ¶ 94(b).

**65.** *See Lorenz v. CSX Corporation*, 1 F.3d 1406 (3d Cir.1993).

section 1962(c) is not stated where the subsidiary merely acts on behalf of, or to the benefit of, its parent.[66]

In this case, the reverse is also true. In this case, the parent corporation (TMS) is the alleged enterprise and the subsidiary (TMCC) is the RICO person (defendant). In her RICO Case Statement, Brown states the purpose of the alleged enterprise is as follows:

> The purpose and function of the enterprise is the manufacture, distribution, and financing of automobiles. In the course of conducting these activities, the defendant [(TMCC)] contracted to finance automobile loans at a rate that they knew had been inflated fraudulently. As a result of this fraud and deception[,] the defendant [(TMCC)] increased its profits by receiving higher monthly payments.[67]

In other words, Brown asserts the purpose and function of TMS is to manufacture, distribute and finance automobiles, and in the course of fulfilling the financing arm of the purpose and function, TMCC, a subsidiary of TMS, made loans which included a fraudulent upcharge for "license fees" and ad valorem taxes not owed by the purchaser. There is no distinction between the affairs of TMCC (the subsidiary) and the affairs of TMS (the parent). TMCC is merely performing the financing function of TMS's operations. TMCC is an integral part of TMS. The activities of TMCC are not separate and apart from TMS. As stated by Brown in her RICO Case Statement, the function of TMS includes financing,[68] and TMCC fulfills this financing function. There is no distinction between the activities of the two entities. Thus, Brown has failed to plead a distinction between the RICO person (TMCC-the subsidiary) and the RICO enterprise (TMS-the parent).

#### (II)(B)(1)(b) "Vertical Enterprise"

 The second alleged enterprise is the "vertical enterprise" consisting of an associa-

tion in fact of TMCC, TMS and Coleman Toyota. Regarding the "vertical enterprise," the Court also finds Brown has failed to distinguish between the RICO person (TMCC) and the enterprise. Brown alleges TMCC is a member of the "vertical enterprise." TMCC is both a defendant and a RICO person. A RICO person cannot associate with itself under § 1962(c).[69] Therefore, Brown has failed to properly plead the association in fact enterprise involving TMCC, TMS and Coleman Toyota (i.e., the "vertical enterprise").

#### (II)(B)(1)(c) Conclusion—RICO Person Distinct from Enterprise

In summary, the Court finds Brown has failed to properly plead the "TMS enterprise" because of her failure to plead facts which clearly show that the TMS (the parent) played a role in the racketeering activity which is distinct from TMCC (the subsidiary). Furthermore, the Court finds Brown has failed to properly plead the "vertical enterprise" because TMCC is simultaneously a member of this association in fact enterprise and is also a RICO person. Under § 1962(c), RICO persons may not associate with themselves.

#### (II)(B)(2) Pattern of Racketeering Activity Separate and Apart from Affairs of Enterprise

 As stated above, TMCC contends Brown has failed to properly plead a claim under § 1962(c) of RICO because Brown failed to allege a pattern of racketeering activity which is separate and apart from the activity in which the two alleged enterprises are engaged. In this case, the alleged pattern of racketeering activity consists of "the practice of inflating governmental fees ..." and passing through to consumers the cost of ad valorem taxes.[70] Brown asserts the activity of both the "TMS enterprise" and the

---

66. *Lorenz*, 1 F.3d at 1412 (citing *Brittingham v. Mobil Corp.*, 943 F.2d 297 (3d Cir.1991) and *Glessner v. Kenny*, 952 F.2d 702 (3d Cir.1991)); *also see Emery v. American General Finance, Inc.*, 938 F.Supp. 495, 497–98 (N.D.Ill.1996).

67. RICO Case Statement, No. 6.

68. RICO Case Statement, No. 6.

69. *Burzynski*, 989 F.2d at 743.

70. RICO Case Statement, No. 5.

"vertical enterprise" consist of the "manufacture, distribution, and financing of automobiles."[71] In describing the relationship between the activities of the two enterprises and the pattern of racketeering activity, Brown admits the "pattern of racketeering activity is related to . . . the usual activities of the enterprise[s]."[72] However, Brown attempts to distinguish between the pattern or racketeering activity and both enterprises by stating the pattern or racketeering activity is "not the same as or necessary to the usual activities of the enterprise[s]."[73]

The usual and daily endeavors of TMCC, as an alleged member of both the "TMS enterprise" and the "vertical enterprise," included funding loans for Coleman Toyota. Funding loans for Coleman Toyota necessarily included funding any upcharges in "license fees" and ad valorem taxes. Whether or not it was necessary to the function of the alleged enterprises for TMCC to fund loans which included upcharges in "license fees" and ad valorem taxes is irrelevant. The question is whether the pattern of racketeering activity is separate and apart from the usual activities of the enterprise. Clearly, the answer to this question is no. As such, the Court finds Brown has failed to properly plead a pattern of racketeering activity which is separate and apart from the activity in which the "TMS enterprise" and the "vertical enterprise" are engaged.

### (II)(C) *TMCC's Management or Control of the Enterprise*

 Finally, TMCC asserts Brown has failed to plead how TMCC managed or controlled both the "TMS enterprise" and the "vertical enterprise." Under § 1962(c), Brown must plead that "the defendant knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the affairs of the alleged enterprise. . . ."[74] The Supreme Court, in *Reves v. Ernst & Young,*

507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)[75] explained the meaning of this requirement as follows:

In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required.[76]

Brown argues TMCC has control over each of the alleged enterprises because TMCC's approval of automobile financing is necessary to the success of the overall scheme of overcharging for "license fees" and passing through the cost of ad valorem taxes.

The Court finds TMCC's part in directing the affairs of each of the alleged enterprises is insufficient to satisfy the requirements of *Reves.* TMCC merely makes and approves loans. TMCC has no part in negotiating the terms of the automobile transactions which include the overcharging for "license fees" and the assessment of the cost of ad valorem taxes. Furthermore, Brown has produced no evidence that TMCC was actually aware of Coleman Toyota's practices. In summary, the Court finds TMCC had no part in directing the affairs of the alleged "TMS enterprise" and the alleged "vertical enterprise." As such, Brown has failed to satisfy this pleading requirement for a RICO claim.

### (II)(D) *Conclusion*

In summary, the Court finds Brown has failed to properly plead a RICO claim based on § 1962(c). Brown has failed to plead fraud in compliance with Rule 9(b). Brown

---

71. RICO Case Statement, No. 6.

72. RICO Case Statement, No. 8.

73. RICO Case Statement, No. 8.

74. Pattern Jury instructions, Committee on Pattern Jury Instructions: District Judges Fifth Circuit, § 8.1, p. 90 (1996).

75. 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).

76. *Reves,* 507 U.S. at 179, 113 S.Ct. at 1170.

did not properly plead either the "TMS enterprise" or the "vertical enterprise" because Brown failed to distinguish between the RICO person and the enterprises and because Brown failed to separate the pattern of racketeering activity and the two alleged enterprises. Finally, Brown did not provide evidence of TMCC's management or control over the two alleged enterprises.

### III. *"Equitable Restitution"*

█ In her complaint, Brown asserts a claim for "equitable restitution" seeking to collect the $17.08 upcharge included in the $40 "license fee" and the $25 in ad valorem taxes charged to Brown by Coleman Toyota. Since there is no cause of action under Louisiana law for "equitable restitution," the Court must assume that Brown is attempting to state a claim for "unjust enrichment." In order to establish a claim for "unjust enrichment," Brown must prove (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other remedy at law.[77] However, "[c]ourts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract."[78] In other words, "[q]uasi-contractual remedies may not supplant a contract between the parties."[79] In addition, "[a] plaintiff can recover in unjust enrichment only if there is no other practical remedy available by which the impoverishment might be or might reasonably have been avoided."[80]

█ The Court finds Brown may not recover against TMCC for unjust enrichment because there is a contract between the parties. Brown also has another remedy at law under the Louisiana Motor Vehicle Sales Finance Act ("LASFA").[81] Brown attempted to assert a claim under the LASFA in Brown's second amended complaint. However, the Court denied Brown leave to file the LASFA claim because plaintiff's counsel failed to adequately perform due diligence before filing suit. The court further held that it would be unfair to the defendants to now allow the plaintiffs to assert additional claims. Therefore, Brown had another remedy at law, but Brown was tardy in asserting that remedy. Thus, based on the foregoing, the Court grants TMCC's motion for summary judgment on Brown's claim for "unjust enrichment."

### IV. *Lack of an Indispensable Party*

█ TMCC argues this case should be dismissed pursuant to Rule 19 of the Federal Rules of Civil Procedure for failure to join an indispensable party. Brown's husband, who is now deceased, also signed the retail installment contract at issue in this suit. Thus, TMCC contends the estate of Louis Brown is required for the complete adjudication of this matter. Pursuant to Rule 19(a) the Court will give the plaintiff time to amend her complaint to name the estate of Louis Brown as a party plaintiff in this suit. If plaintiff fails to timely amend her suit, the Court will dismiss plaintiff's suit for failure to name an indispensable party.

### V. *Conclusion*

Insofar as plaintiff's claim regarding Coleman Toyota's primary liability on the TILA claims, the Court finds there are genuine issues of material fact which preclude summary judgment on the issue of whether the "finance charge" disclosed by Coleman Toyota was understated by the amount of the $17.08 upcharge in the "license fee." Based on the applicability of the "good faith conformity" defense set forth in 15 U.S.C. § 1640(f), the Court grants summary judgment on the issue of whether Coleman Toyota is required to disclose the fact of or the

**77.** *Baker v. Maclay Properties Co.,* 648 So.2d 888, 897 (La.1995) (citations omitted).

**78.** *SMP Sales Mgt., Inc. v. Fleet Credit Corp.,* 960 F.2d 557, 560 (5th Cir.1992) (citations omitted).

**79.** *Marple v. Kurzweg,* 902 F.2d 397, 401 (5th Cir.1990) (citations omitted).

**80.** *Carter v. Flanagan,* 455 So.2d 689, 692 (La. App. 2d Cir.1984).

**81.** La. R.S. 6:951, et seq.

amount of the upcharge in "license fee" charged to Brown. The Court also grants TMCC's motion for summary judgment, on the issue of whether the ad valorem tax, owed by Coleman Toyota, and passed through to Brown, should have been included in the "finance charge," because the Court finds the cost of the ad valorem tax meets the comparable cash transaction exception to the definition of "finance charge."

As noted above, TMCC can only be secondarily liable for the remaining alleged TILA violation. Therefore, even though the Court denied TMCC's motion for summary judgment on issue of whether Coleman Toyota was primarily liable for the first TILA claim set forth above, the Court finds TMCC is not secondarily liable for this alleged TILA violation. Specifically, the Court finds that TMCC is neither liable as an assignee for this TILA violation pursuant to 15 U.S.C. § 1641(a) nor is TMCC liable for this alleged TILA violation based on the FTC Holder Notice included in the retail installment contract between Brown and Coleman Toyota.

With regard to the RICO claim under § 1962(c), the Court grants TMCC's motion for summary judgment because Brown failed to: (1) plead fraud with particularity in compliance with Rule 9(b); (2) plead an enterprise because she did not distinguish between the RICO person and the two alleged enterprises and because she failed to plead a pattern of racketeering activity which is separate and apart from the enterprise; and (3) establish that TMCC had sufficient management or control of the enterprise.

The Court also grants TMCC's motion for summary judgment on the claim for "equitable restitution."

Finally, the Court, pursuant to Rule 19(a), directs Brown to add the estate of Louis Brown as a party plaintiff in this suit within 20 days from the date of this order.

Therefore:

Since there are no additional claims pending between Brown and TMCC, IT IS ORDERED that TMCC's motion for summary judgment be and it is hereby GRANTED.

IT IS FURTHER ORDERED that the plaintiff, Brown, add the estate of Louis Brown as a party plaintiff pursuant to Rule 19(a) within 20 days from the date of this order.