In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 02-30488
Summary Calendar

---

COURTNEY ANN HARRIS,

Plaintiff-Appellant,

VERSUS

BILLY R. TRAVIS; RENEE HEGWOOD;
LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS;
AND JERRY GOODWIN,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Louisiana
m 99-CV-1946

---

December 20, 2002

Before HIGGINBOTHAM, SMITH, and
CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be (continued...)

Courtney Harris appeals a partial summary judgment and subsequent jury verdict on her employment discrimination claims. Finding

---

(...continued)
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

error in neither the summary judgment nor the verdict, we affirm.

## I.

Harris, a black woman over the age of forty, has worked at the Louisiana Department of Public Safety and Corrections ("DPSC") at the A.L. Swanson Correctional Center for Youth ("Swanson") in secretarial positions since 1974. She applied for a promotion from the position of Secretary II to Administrative Secretary in the warden's office in September 1997, at roughly the same time that Billy Travis became the warden at Swanson. A younger white woman received the position instead.

In early 1998, Travis "detailed" Harris to an Administrative Secretary position to support Rene Hegwood, Swanson's human resources manager.[1] When this detail ended in July 1998 and Harris returned to her Secretary II position, Tressie Tyler and Kristi Beard, younger white women, had assumed the bulk of her duties. Harris also had to move to a smaller, less comfortable office in another building.

In November 1998, Harris applied for the position of Administrative Secretary in the mental health unit at Swanson. Rachel Childress, a younger white woman, was appointed instead. Harris then filed an EEOC complaint based on all these events. While the complaint was pending, she applied for a lateral transfer into the administrative director's office; she was denied the transfer and alleges that the position was given to a younger white woman.

After the EEOC dismissed Harris's complaint and issued a right-to-sue letter, she sued the DPSC, Travis, Hegwood, and Jerry Goodwin, who succeeded Travis as warden in August 1999, alleging violations of title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*[2] She also alleged violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986 against Travis, Hegwood, and Goodwin only. The court entered summary judgment on all claims except the title VII claims against DPSC and the §§ 1981 and 1983 claims against Travis based on the failure to promote in November 1998, the re-allocation of Harris's secretarial duties, and the relocation of her office. After a two-day trial, the jury returned a verdict for DPSC and Travis.

## II.
### A.

We review a summary judgment *de novo* and apply the same standards as did the district court. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.* at 248. The court must draw all reasonable inferences

---

[1] A "detail" is a temporary assignment to a new position on a trial basis to evaluate the employee's performance in that position.

[2] In her first amended complaint, Harris also alleged a state law promissory estoppel claim against all defendants, but she later abandoned that claim.

in favor of the non-moving party. *Id.* at 255.

At the same time, not all disputes or all inferences are reasonable, and the court is not obliged to accept mere assertions. Thus, once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-moving party must produce "specific facts" showing a genuine factual issue for trial. FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Corp. v. Zenith Radio*, 475 U.S. 574, 587 (1986). The non-moving party cannot rest on mere conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic arguments, none of which will substitute for specific facts showing a genuine issue for trial. *TIG*, 276 F.3d at 759.

### B.

The district court carefully explained, in well reasoned opinions, why most of Harris's claims cannot survive summary judgment. We agree with these opinions, which we review briefly, and we affirm.

The court properly entered summary judgment on all claims against Goodwin, because Harris alleged no facts for which Goodwin could be held liable. The last ground for Harris's claims is the denial of her application for a lateral transfer in May 1999. Goodwin did not become warden until August 1999. Thus, he cannot be liable on any theory.[3]

---

[3] Harris alleged continuing harassment and discrimination by Goodwin, but she produced no evidence to support these allegations. She argues on appeal that Goodwin produced no evidence to

(continued...)

Summary judgment was appropriate on the title VII and ADEA claims against Travis and Hegwood, because individuals cannot be liable personally under either statute. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (title VII); *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) (ADEA). Harris also sued Travis in his official capacity for violations of title VII. Yet, a plaintiff may not sue both the employer and its agent in an official capacity. *Indest*, 164 F.3d at 262.

DPSC was entitled to summary judgment on the ADEA claim, because it has sovereign immunity from the ADEA. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000). We already have held, on another occasion, that DPSC has sovereign immunity as an agency of the state of Louisiana. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313-14 (5th Cir. 1999). Harris gives no reason to reconsider or distinguish this holding.

DPSC also was entitled to summary judgment on three aspects of Harris's title VII claims. First, DPSC is not liable for the failure to promote Harris in November 1997, because she did not file an EEOC complaint until December 1998, outside the 300-day limitations period for title VII. 42 U.S.C. § 2000e-5(e)(1). Harris contends that this incident is part of a continuing violation and

---

[3](...continued)
refute the allegations. Yet, Goodwin only needs to point to an absence of evidence, whereas Harris bears the burden to produce specific facts raising a genuine issue of material fact regarding any continuing harassment and discrimination. (Harris also seems to confuse the standards for a motion to dismiss with those for a motion for summary judgment.)

thus excepted from the usual 300-day limitations period. Although this circuit recognizes a continuing-violation exception, "the plaintiff must demonstrate more than a series of discriminatory acts. He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998) (citations omitted). Harris has produced no such evidence and, indeed, pleaded her complaint in a style of discrete incidents. The title VII claim based on the failure to promote in November 1997 is therefore barred by the statute of limitations.

Second, DPSC is not liable for the denial of Harris's request for a lateral transfer in May 1999, because denial of a lateral transfer is not an adverse employment action covered by title VII. *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879-80 (5th Cir. 1999). Third, DPSC is not liable for Harris's discriminatory-effect claim, which does not require proof of intent to discriminate, but rather proof of "facially neutral employment standards [that] operate more harshly on one group than another." *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1367 (5th Cir. 1992) (citation omitted). A plaintiff not only must offer proof of statistical disparities, but also must identify "specific employment practices that are allegedly responsible for any observed statistical disparities." *Id.* (citation omitted). Harris has done neither; thus, her discriminatory effect claim cannot withstand summary judgment.

Likewise, Travis was entitled to summary judgment on these three aspects of Harris's §§ 1981 and 1983 claims. When employment discrimination claims are brought under §§ 1981 and 1983, they are analyzed under the same framework as is a title VII claim. *Lawrence v. Univ. of Tex. Med. Branch*, 163 F.3d 309, 311 (5th Cir. 1999) (citation omitted). The district court, then, properly entered summary judgment for Travis on the §§ 1981 and 1983 claims insofar as these claims are based on the failure to promote Harris in November 1997, the denial of her request for a lateral transfer, and any discriminatory effect.[4]

Finally, the court properly granted summary judgment on the §§ 1985 and 1986 claims against Travis and Hegwood. To prove a § 1985 violation, Harris must show that Travis and Hegwood discriminated against blacks *as a class*, not simply against her because she is black. *Newberry v. East Tex. State Univ.*, 161 F.3d 276, 281 (5th Cir. 1998). She has offered no proof of class-based animus or discrimination. Moreover, her § 1985 claim relies exclusively on her title VII claims, but § 1985 may not be used as a remedy for title VII violations. *Horaist v. Doctor's Hosp.*, 255 F.3d 261, 270 (5th Cir. 2001). And, without an underlying § 1985 violation, her § 1986 claim necessarily fails as well. 42 U.S.C. § 1986; *Newberry*, 161 F.3d at 281 n.3.

### III.

---

[4] Harris alleged the same violations of §§ 1981 and 1983 against Hegwood, but the district court properly found that Hegwood was entitled to qualified immunity against Harris's claims. Harris alleged only that Hegwood did not interview her when she applied for the Administrative Secretary position in November 1998. Harris produced no evidence that Hegwood participated in the ultimate employment decision, and hence no evidence that Hegwood violated any of Harris's clearly established rights.

The summary judgment left three main factual disputes for trial: (1) the failure to promote Harris in November 1998, (2) the re-allocation of her secretarial duties, and (3) the relocation of her office. These disputes went to trial against DPSC under title VII and against Travis under §§ 1981 and 1983. The jury returned a verdict for DPSC and Travis, and the court denied Harris's motion for judgment as a matter of law ("j.m.l.").

We review *de novo* a ruling on a motion for j.m.l. *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 365 (5th Cir. 2002). Yet, when an action is tried to a jury, a motion for j.m.l. is in effect a challenge to the legal sufficiency of the evidence supporting the verdict. *Brown v. Bryan County, Okla.*, 219 F.3d 450, 456 (5th Cir. 2000). Thus, we review the evidence "drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Id.* We will reverse "only if no reasonable jury could have arrived at the verdict." *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998). Because Harris cannot satisfy this stringent standard, we affirm.

We review the verdict under the familiar evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] Harris first must state a *prima facie* case of employment discrimination, which we will assume for the purposes of this appeal. *Id.* at 802-03. Next, the burden shifts to DPSC and Travis to adduce a legitimate, non-

discriminatory reason for the employment decisions. *Id.* If they do so, Harris must offer specific evidence to demonstrate that the reasons are merely pretextual. *Id.* at 804.

The evidence more than supports the verdict. DPSC and Travis adduced a legitimate, non-discriminatory reason for not promoting Harris to the position of Administrative Secretary at the new mental health unit in November 1998, namely, that Childress already worked as a mental health clerk at Swanson's Department of Social Services and therefore was familiar with the secretarial duties associated with mental health services at Swanson. Indeed, the evidence suggests that there was not really any position to fill in the first place. As the new unit grew rapidly, Travis simply re-designated Childress's clerical position to Secretary II (not Administrative Secretary, as Harris asserts) to reflect her increased workload. Harris's evidence did not establish that this explanation was pretextual, and a reasonably jury easily could have credited the explanation.

DPSC and Travis also offered legitimate, non-discriminatory reasons for the re-allocation of Harris's secretarial duties and relocation of her office after she returned from detail in July 1998. Harris's difficulties resulted not from discrimination, but from her supervisors' duties and locations. When Harris returned from the detail, she continued to work for her former supervisor, Marcia Ensley. During the detail, however, Ensley had been reassigned from security warden to program manager in social work. Just as Ensley's duties changed, so did Harris's. Beard and Tyler assumed Harris's older duties as the secretaries to Ensley's replacement.

Shortly after Harris's return, Ensley

---

[5] Although *McDonnell Douglas* burden-shifting is most common in title VII cases, it also applies to employment discrimination claims brought under §§ 1981 and 1983. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

resigned. Travis appointed Ella Gray as the new program manager in social work, and Harris continued to serve as the secretary to the program manager. Yet, Gray wanted to keep her old office in a different building rather than move into Ensley's old office, thereby requiring Harris to move into a smaller, less comfortable office in Gray's building. Again, Harris's evidence did not prove that these explanations for the re-allocation of her duties and relocation of her office were pretextual, and a reasonable jury easily could have credited the explanations.

AFFIRMED.