IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-10454
Summary Calendar
_____


PHILLIP A. WALLACE,

Plaintiff-Appellant,

versus

TEXAS TECH UNIV; JAMES DICKEY,
in his individual and official
capacity,

Defendants-Appellees.


_____

Appeal from the United States District Court for the
Northern District of Texas
_____
April 5, 1996

Before GARWOOD, WIENER and PARKER, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Phillip Wallace (Wallace) appeals the summary judgment dismissal of his employment discrimination and 42 U.S.C. §§ 1981 and 1983 suit and the denial of his motion for new trial.

**Facts and Proceedings Below**

Defendant-appellee James Dickey (Dickey), the head coach of the men's basketball team at defendant-appellee Texas Tech University (Texas Tech), hired Wallace as an assistant coach for the team in a one-year contract beginning in August 1991. Wallace,

an African-American, had no coaching experience prior to his work at Texas Tech, but he had played on the Texas Tech basketball team during his college years.  Dickey also hired Doc Sadler (Sadler) as an assistant coach for the same period.  Sadler, a white male, had seven years of college coaching experience at the time Dickey hired him.  Sadler was paid $57.83 per month more than Wallace.

It is undisputed that Dickey admonished Wallace not to become "too close" to the players on the basketball team and that Wallace continued to encourage close, personal relationships between himself and various team players.  While an assistant coach, Wallace advised certain team players that they were eligible for financial assistance during their fifth year at Texas Tech.  When Wallace's contract expired, Dickey did not renew it.  Wallace was replaced by Greg Pickney, an African-American.

Wallace filed a complaint with the EEOC in December 1993.  On May 31, 1994, Wallace filed this suit against Texas Tech and Dickey, alleging that they discriminated against him on the basis of his race and in retaliation for the exercise of his First Amendment rights of speech (for advising African-American players of their eligibility for financial assistance) and association (for having close, personal relationships with the players) in violation of Sections 1981 and 1983 and Title VII.  Defendants-appellees denied the allegations and filed a motion to transfer venue.  The district court granted the motion for transfer of venue in July 1994.  Defendants-appellees later filed a motion for summary judgment on March 15, 1995.  The district court granted the motion

and entered judgment dismissing Wallace's complaint on April 21, 1995, holding that (1) Dickey, in his individual capacity, is entitled to qualified immunity on the section 1981 claims; (2) Dickey, in his official capacity, and Texas Tech are entitled to immunity under the Eleventh Amendment; and (3) defendants-appellees are entitled to judgment as a matter of law in their favor on the merits.  The order and judgment were both filed and entered on the docket on April 24, 1995.  Wallace filed a response to the summary judgment motion the next day,[1] and he filed a motion for new trial on May 1, 1995.  The district court denied the motion for new trial the same day it was filed.  Wallace filed an identical motion for new trial on May 4, 1995, which the district court denied on May 5, 1995.  Wallace filed a timely notice of appeal.

## Discussion

I.   Summary Judgment

The standard of review of the dismissal of a case on summary judgment is *de novo*.  *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir. 1995), *cert. denied,* 116 S.Ct. 704 (1996). The moving party "bears the initial responsibility of informing the

---

[1]     Plaintiff's Response to Defendants' Motion for Summary Judgment and Supporting Brief was filed April 25, 1995.  The response itself is not dated.  There is a copy of an envelope from Wallace's attorney's office to the district court clerk's office attached to the response.  The envelope bears a postal date stamp of April 12, 1995; the envelope is also marked "refused" (by whom is not indicated) on April 14, apparently because there was postage due of twenty-three cents.  Wallace does not refer to this envelope, and he never argues that his response was filed by mailing it.  Even had the response been timely filed, it would not have affected the district court's determination because the response relies on Wallace's pleadings, neither providing any evidence nor pointing to any evidence in the record.

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986) (quoting Fed. Rule Civ. P. 56(c)). The moving party "need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis in original).

Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id.* (citations omitted). Wallace appears to rely on certain facts in his brief that were not before the district court when it ruled on the defendants-appellees' summary judgment motion; he also relies, in part, on his pleadings. "Our inquiry, however, is limited to the summary judgment record . . . ." *Id.* at 1071, n.1. Moreover, pleadings are not summary judgment evidence. *Id.* at 1075. Accordingly, we consider only the evidence that was in front of the district court in our analysis of Wallace's claims that summary judgment was improper.[2]

---

[2] Wallace does not argue that it was improper for the district court to rule on the summary judgment motion prior to receiving his response. It was proper under Local Rule 5.1(e) of the United States District Court for the Northern District of Texas, which requires any response to a motion for summary judgment to be filed

4

On appeal, Wallace argues that the district court erred in granting the summary judgment motion on the merits, as well as by granting qualified immunity and Eleventh Amendment immunity for prospective injunctive relief. Because we hold that Wallace failed to raise a genuine issue of material fact on his claims on the merits, we affirm summary judgment without reaching the issue of qualified immunity. *See Quives v. Campbell,* 934 F.2d 668, 669 (5th Cir. 1991). And because Wallace lacks standing to request the only prospective injunctive relief that he seeks, his complaint about the grant of Eleventh Amendment immunity to Dickey fails.[3]

A.   Race Discrimination Claims

To succeed on a claim of intentional discrimination under

---

within twenty days.

[3]   Suits against state officials in their official capacity are considered to be suits against the individual's office, and so are generally barred as suits against the state itself. *Will v. Michigan Dept. of State Police*, 109 S.Ct. 2304, 2312 (1989). But claims for prospective injunctive relief brought against state officials in their official capacity are not suits against the state. *Id*. at 2312, n.10. Wallace argues that the district court erred by improperly barring his claim for prospective injunctive relief against Dickey. But the only prospective injunctive relief that Wallace requested against Dickey was a permanent injunction prohibiting him from pursuing unconstitutional policies in the future. Jurisdiction over a plaintiff's claims for future relief is appropriate only if a reasonable likelihood exists that *the plaintiff* will again be subjected to the allegedly unconstitutional actions. *Honig v. Doe*, 108 S.Ct. 592, 601 (1988); *Marden v. International Ass'n of Machinists and Aerospace Workers*, 576 F.2d 576, 582 (5th Cir. 1978). Because Wallace did not seek reinstatement, there is not a reasonable likelihood that he would again be subjected to the allegedly unconstitutional actions. Thus, this issue is moot. *See Marden*, 576 F.2d at 582. Texas Tech, as a state institution, clearly enjoys Eleventh Amendment immunity. *See Laxey v. Louisiana Board of Trustees*, 22 F.3d 621, 623 (5th Cir. 1994); *Henry v. Texas Tech University*, 466 F.Supp. 141, 144-146 (N.D. Tex. 1979).

5

Title VII, Section 1983, or Section 1981, a plaintiff must first prove a *prima facie* case of discrimination. *See, e.g.*, *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995) (Title VII); *Larry v. White*, 929 F.2d 206, 209 (5th Cir. 1991) (plaintiff must prove racially discriminatory purpose of act to demonstrate Section 1981 or Section 1983 violation), *cert. denied,* 113 S.Ct. 1946 (1993); *Briggs v. Anderson*, 796 F.2d 1009, 1019-21 (8th Cir. 1986) (inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII). Generally, a plaintiff proves a *prima facie* case through a four-element test that allows an inference of discrimination. *Meinecke*, 66 F.3d at 83. But a *prima facie* case can also be proven by direct evidence of discriminatory motive. *See Kendall v. Block*, 821 F.2d 1142, 1145 (5th Cir. 1987). Wallace's brief identifies four race-based claims: (1) intentional discrimination in refusing to renew his contract, (2) discriminatory disparate treatment in paying him less than Sadler, (3) discriminatory disparate treatment in disciplining him, and (4) hostile work environment.

1. Refusal to Renew Wallace's Contract

Dickey's affidavit states that he encountered problems with Wallace soon after Wallace was hired because Wallace (1) was unwilling to follow his instructions, and (2) repeatedly questioned Dickey's coaching judgment.[4] Dickey's affidavit also stated that

---

[4] Dickey's affidavit alleges specific instances of Wallace's refusals to follow directions and his questioning of Dickey's judgment. Wallace attacks Dickey's affidavit as being improperly

he elected not to renew Wallace's contract because Wallace's job performance was unacceptable, and Dickey's affidavit further specifically denied that race played any role in his decision. Wallace argues that he presented direct evidence of discriminatory motive: Dickey's use of racial slurs.[5] Wallace misconstrues our standard of review. There was *no record evidence* to support this bare allegation of racial slurs when the district court granted defendants-appellees' summary judgment motion.[6] We do not assume that Wallace could have supported this contention. *Little*, 37 F.3d at 1075 ("We resolve factual controversies [for purposes of summary judgment] in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or*

---

based on hearsay. Although some of Dickey's specific examples may not be based on his personal knowledge of the events, Dickey does not offer those incidents for the truth of the events, but rather, he offers his belief that these incidents occurred as proof of his motive for failing to renew Wallace's contract. Accordingly, those statements are not hearsay. *See* Fed. R. Evid. 801(c).

[5]  Wallace recognizes that he cannot rely on the test set forth in *McDonnell Douglass Corp. v. Green*, 93 S.Ct. 1817 (1973), which permits an inference of discrimination, for the failure to renew his contract claim because he was replaced by an African-American.

[6]  Plaintiff's Objections and Responses to Defendants' First Set of Interrogatories, which was attached to defendants-appellees' motion for summary judgment, does contain the following statement: "African-American players were referred to and addressed with hostile and profane language whereas white players did not receive such treatment." This vague and conclusory statement—which includes no reference to racial remarks—fails to "designate specific facts"——such as what was said, to whom it was said, or even who made the comments—sufficient to avoid summary judgment. *See Little*, 37 F.3d at 1075.

*would prove the necessary facts.*") (emphasis in original). Consequently, the uncontroverted record evidence not only shows an absence of material facts, it negates an element of Wallace's cause of action. *See e.g.*, *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1345-46 (5th Cir. 1985) (describing plaintiff's burden of proving discriminatory intent in failure to renew contract case). The district court did not err in granting summary judgment against Wallace on this claim.

### 2. Disparate Pay

The record evidence on this issue was Dickey's affidavit testimony that Sadler was paid $57.83 per month more than Wallace because of Sadler's significantly greater college coaching experience. Sadler had seven years of college level coaching experience while Wallace had none. Dickey's affidavit also specifically denied that race was a factor in setting Wallace's salary. This uncontroverted evidence is sufficient to establish that there is an absence of a material fact on the issue of discriminatory motive because Wallace fails to provide any evidence that this explanation is pretextual.[7] *See Pouncy v. Prudential Ins. Co. of America*, 668 F.2d 795, 803 (5th Cir. 1982) (listing differing levels of experience as a nondiscriminatory rationale for unequal salaries for employees performing the same job); *Pittman v.*

---

[7] Plaintiff's Objections and Responses to Defendants' First Set of Interrogatories included an allegation that Dickey represented to Wallace that he "would be paid at the same level" as Sadler. This does not constitute evidence of pretext; pretextual evidence would show that the proffered nondiscriminatory reason was not the cause of the wage differential. *See Rhodes v. Guiberson Oil Tools*, No. 92-3770, slip op. at 1808 (5th Cir. 1996)(en banc).

*Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981) (once defendant articulates nondiscriminatory reason for disparate pay, then plaintiff must show that articulated reason is pretext). The district court did not err in granting summary judgment against Wallace on his disparate pay claim.

### 3. Disparate Discipline

Wallace appears to complain of two types of discipline. First, he complains that Dickey cursed at him in front of players, while he never cursed at Sadler in front of players. Second, he complains that he was reprimanded for conduct for which Sadler was not reprimanded. Although he fails to adequately explain the second allegation of disparate discipline on appeal, it appears from his initial pleading to be another way of expressing his complaint that he was instructed not to become "too close" to the players and was reprimanded for his failure to follow these instructions. His pleading alleged that Sadler was not similarly instructed.

The only record evidence in front of the district court showed that Dickey did not curse at Wallace in front of the players or other coaches.[8] Wallace also fails to point to any specific

---

[8] Wallace's answer to an interrogatory—that Dickey treated him in a "very demeaning manner" and used "hostile and profane" language—was too vague to establish a genuine issue of fact. Dickey's affidavit states that he never cursed at Wallace in front of players or coaches. Wallace argues that Dickey's failure to swear that he *never* cursed at him, even in private, prevents Wallace from establishing that there is an absence of a genuine issue of material fact. This ignores Wallace's own complaint, which alleges only that Dickey cursed at Wallace in front of players. Additionally, there was no record evidence that Dickey *ever* cursed at Wallace. Dickey was not required to negate any

9

summary judgment evidence that Sadler was given different instructions regarding personal relationships with the players or that Sadler was disciplined differently for conduct similar to Wallace's actions. *See, e.g.*, *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980) (employer did not unlawfully discriminate against African-American employee who was fired for his part in a fight when white employee was merely suspended because African-American employee resorted to physical violence with a dangerous instrument while white employee only participated verbally), *cert. denied,* 101 S.Ct. (1980). Accordingly, there is no evidence that Dickey disciplined Wallace differently because of his race. The district court did not err in granting summary judgment against Wallace on his disparate discipline claim.

### 4.    Hostile Work Environment

Wallace alleges that Dickey "routinely [made] racist remarks." We assume, *arguendo*, that if there were specific evidence of this in the record, such facts may have prevented summary judgment from being rendered against Wallace on this claim.[9] But there was no

---

element of Wallace's cause of action; he merely was required to demonstrate an absence of evidence. *Little*, 37 F.3d at 1075. He met his burden.

[9]    Discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII. *See DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995) (citations omitted), *cert. denied,* 116 S.Ct. 473 (1995). To prove a hostile environment claim, Wallace must have shown that the discriminatory conduct was severe or pervasive enough to create an objectively hostile or abusive work environment. *Harris v. Forklift Sys., Inc.*, 114 S.Ct. 367, 370 (1993).

specific evidence of racist remarks by Dickey—or anyone else—in the record. Dickey's affidavit states that he did not make racial remarks at practice, in games, coaches' meetings, or at any other time. Both Will Flemons (Flemons), a member of the Texas Tech basketball team during the year in which Wallace was an assistant coach, and Robert Brashear (Brashear), a part-time assistant basketball coach at Texas Tech during that year, also stated in affidavits that they never heard Dickey make racial remarks or demean anyone because of his or her race. This evidence is sufficient to demonstrate the absence of a genuine issue of material fact. The district court did not err in granting summary judgment against Wallace on this claim.

B.    First Amendment Claim

Wallace alleged that Dickey and Texas Tech unlawfully retaliated against him by failing to renew his contract because he exercised protected free speech and association rights. The alleged speech that Wallace argues is protected occurred when he advised African-American players about their right to receive financial assistance and "how to handle" "discrimination by Dickey regarding the players' eligibility to receive" the financial assistance. Although Wallace's initial pleading was vague in its assertion of a violation of his First Amendment right to freedom of association, we understand this complaint to be that he has a right to develop close, personal relationships with the players. We hold that the district court did not err in granting summary judgment against him on these claims because he failed to show that the

11

activities he engaged in are protected.

### 1. Free Speech

While a public employee may not be discharged for exercising his or her right to free speech under the First Amendment, it is clear that only certain public employee speech is thus protected. *Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir. 1990). This Court has established a three-part test to determine whether particular speech by a public employee is protected from public employer retaliation. *Id.* First, the speech must have involved a matter of public concern. *Id.* Second, the public employee's interest in commenting on matters of public concern must outweigh the public employer's interest in promoting efficiency. *Id.* The third prong of the test is based on causation: the employee's speech must have motivated the decision to discharge the employee. *Id.* We need not go beyond the first prong of this test because Wallace failed to meet his summary judgment burden of producing evidence that the speech for which he alleges that he was retaliated against was speech involving a matter of public concern. *See Page v. DeLaune*, 837 F.2d 233, 238 (5th Cir. 1988) (plaintiff fails to meet burden of creating genuine issue of material fact on element of public concern to avoid summary judgment); *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1023-24 (5th Cir. 1988) (vague affidavit insufficient for plaintiff-employee to meet burden of establishing that speech is matter of public concern on summary judgment); *id.* at n.2 (allegations in complaint may not be relied upon as evidence to avoid summary judgment).

12

The content, form, and context of the speech determines whether it is of public concern. *Thompson*, 901 F.2d at 461. "The courts will not interfere with personnel decisions 'when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest.'" *Page*, 837 F.2d at 237 (quoting *Connick v. Meyers*, 103 S.Ct. 1684, 1690 (1983)). In determining whether speech is of public concern, we must determine if Wallace's speech was "primarily in [his] role as citizen or primarily in his role as employee." *Terrell v. University of Texas Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986), *cert. denied,* 107 S.Ct. 948 (1987). Wallace admits that he was speaking primarily in his role as employee, but he argues that he was speaking on a matter of public concern because he was not speaking of his own personal dispute or grievance. He misinterprets the law.

We have recognized that public employees may speak in their role as employees yet still speak on matters of public concern in limited instances. *Wilson v. UT Health Center*, 973 F.2d 1263, 1269-70 (5th Cir. 1992) (speech of public employee as employee *and* as citizen is of public concern), *cert. denied,* 113 S.Ct. 1644 (1993); *see Schultea v. Wood*, 27 F.3d 1112, 1120 (5th Cir. 1994) (police chief reporting suspected criminal activity by a city council member to the proper *state* agency was speech on public concern even though he spoke as employee), *superseded on other grounds*, 47 F.3d 1427 (1995) (en banc). But we have held that speech made in the role as employee is of public concern only in

13

limited cases: those involving the report of corruption or wrongdoing to higher authorities. *See Wilson*, 973 F.2d at 1266 (reporting sexual harassment to superiors); *cf. Brown v. Texas A & M Univ.*, 804 F.2d 327, 329-30, 336-38 (5th Cir. 1986) (explaining that the First Amendment protects "whistle blowing" by a public employee). There is no evidence (or even an allegation) that Wallace was a whistle blower or attempted to report any wrongdoing to the public or to higher authorities. Thus, Wallace failed to allege facts, much less present evidence, sufficient to constitute speech on a matter of public concern. Accordingly, the district court did not err in granting summary judgment against him on his free speech claim.[10]

### 2. Freedom of Association

The summary judgment evidence included Dickey's admissions

---

[10] In addition, Dickey's affidavit—stating that he refused to renew Wallace's contract because of a difference in coaching philosophies and Dickey's perception that Wallace lacked loyalty and refused to follow directions—points to an absence of a genuine issue of fact on the issue of causation. There is no evidence that Wallace's speech was causally related to the non-renewal of his contract. In fact, Dickey, Flemons, and Brashear all stated in their affidavits that Dickey was attempting to obtain financial assistance for his fifth-year players prior to Wallace's involvement in the matter.

Alternatively, even if there were evidence sufficient to establish genuine issues of fact that Wallace's speech was protected by the First Amendment and on causation, Dickey would still be entitled to qualified immunity on this claim because a right to engage in such speech was not clearly established at the time of the alleged violation. *See Noyola*, 846 F.2d at 1024-26 (holding officials entitled to qualified immunity because protected status of speech and unlawfulness of terminating plaintiff not facially apparent at time). As previously observed, Wallace had no standing to seek any of the injunctive relief requested in his pleadings (see note 3, *supra*), and Texas Tech enjoyed Eleventh Amendment immunity.

14

that (1) he instructed all of the coaches, including Wallace, not to become too close to the players because his coaching philosophy is that coaches need to maintain a professional distance to remain objective, and (2) Wallace's failure to follow these instructions was one cause of the refusal to renew his contract. Nevertheless, we hold that summary judgment was proper because Wallace produced no evidence that his association with the players was one entitled to constitutional protection.

The Supreme Court has recognized that the First Amendment protects a right of association in two lines of cases. *See City of Dallas v. Stanglin*, 109 S.Ct. 1591, 1594 (1989). First, the choice to enter into and maintain certain intimate human relationships is protected as an element of personal liberty. *Id.* (citing *Roberts v. United States Jaycees*, 104 S.Ct. 3244 (1984)). Second, the Court has recognized a right to associate for the purpose of engaging in expressive activities protected by the First Amendment. *See id.* Wallace's freedom of association claim is based on the second line of cases, asserting that he has a right to become close with the players and enter "private relationships" with them.

The Constitution does not include a "generalized right of 'social association.'" *City of Dallas*, 109 S.Ct. 1595. *See also Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995) (relationships of bar owner with patrons and employees not type of intimate relationship protected by First Amendment). The specific types of intimate associations which have found protection in the First Amendment have been more intimate than our image of typical

15

coach-player relationships.  *See Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 107 S.Ct. 1940, 1945-46 (1987) (listing cases affording constitutional protection to marriage, begetting and bearing children, child rearing and education, and living with relatives) (citations omitted).

Although First Amendment protection of social association is not limited to family relationships, it is, at least in many contexts, limited to relationships "that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Board of Directors of Rotary Int'l*, 107 S.Ct. at 1946 (citation omitted).  We have held that associations in some private clubs, for example, are protected.  *See Louisiana Debating and Literary Assoc. v. City of New Orleans*, 42 F.3d 1483, 1497-98 (5th Cir. 1995), *cert. denied,* 115 S.Ct. 2583 (1995).

Dickey's motion for summary judgment specified the absence of a material fact—evidence of any kind of intimacy—, and Wallace failed to provide any evidence in response.  *See Noyola*, 846 F.2d at 1024 n.2; *cf. Louisiana Debating and Literary Assoc.*, 42 F.3d at 1494 (discussing factors to consider in determining whether private clubs are protected).  Further, even if Wallace could have established an abstract First Amendment right of association for some coach-player relationships, the limitations Dickey placed on such a right would be supported by Texas Tech's interest in promoting the efficient coaching of its basketball team.  *See*

16

*Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991) (applying *Pickering* balancing test to free speech claim).[11]  The district court did not err in granting summary judgment in favor of defendants-appellees on this claim.

II.  Motion for New Trial

After summary judgment had been entered against him, Wallace filed a motion for new trial pursuant to Federal Rule of Civil Procedure 59.  A denial of a motion for new trial will be overturned only for an abuse of discretion. *Hoyt R. Matise Co. v. Zurn*, 754 F.2d 560, 568 n.14 (5th Cir. 1985) (citing *Chemical Delinting Co. v. Jackson*, 193 F.2d 123 (5th Cir. 1951)).  Wallace argues that the district court abused its discretion by refusing to grant a new trial because the summary judgment was against the weight of the evidence.

The arguments in Wallace's motion for new trial appear[12] to be based on the evidence he submitted with the motion:  his affidavit, the affidavit of a former Texas Tech player, and several letters

---

[11]     In addition, Dickey would be entitled to qualified immunity because a right to coach-player association as claimed by Wallace was not clearly established at the time of Dickey's instructions. *See Vieira v. Presley*, 988 F.2d 850, 853 (8th Cir. 1993) (declining to reach issue of whether associations with "friends and acquaintances" are protected by First Amendment because such protection not clearly established); *Noyola*, 846 F.2d at 1025-26 (discussing qualified immunity).  As previously noted (see notes 3 and 10, *supra*), Wallace had no standing to procure any of the injunctive relief sought in his pleadings, and Texas Tech had Eleventh Amendment immunity.

[12]     If Wallace's argument is, instead, that the district court abused its discretion in failing to grant his motion for new trial because the summary judgment evidence was sufficient to establish a genuine issue for trial, we reject this argument for the reasons set forth in Section I. *supra*.

17

from former Texas Tech players.  A party is not entitled to have a summary judgment set aside on the basis of evidence not produced prior to summary judgment unless he demonstrates a valid excuse for the failure to produce the evidence prior to the court's summary judgment ruling.  *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473-74 (5th Cir. 1989).  The district court properly refused to review the new evidence because Wallace failed to allege or show any reason for failing to provide the evidence prior to summary judgment.  *See, e.g., id.*  The district court did not abuse its discretion by denying Wallace's motion for new trial.

## Conclusion

For the foregoing reasons, the district court's judgment is


AFFIRMED.

18