**Michael AUCOIN**

v.

**RSW HOLDINGS, L.L.C. d/b/a Vincent's Italian Cuisine, et al.**

**Civil Action No. 06–208–FJP–CN.**

United States District Court, M.D. Louisiana.

June 28, 2007.

Kathryn W. Landry, Caprice Ieyoub, Ieyoub & Landry, LLC, Baton Rouge, LA, for Michael Aucoin.

Paul A. Lea, Jr., Robin C. Dunford, Peragine & Lea, LLC, Covington, LA, Charles A. O'Brien, III Baton Rouge, LA, for RSW Holdings, L.L.C. d/b/a Vincent's Italian Cuisine, et al.

### *RULING*

POLOZOLA, District Judge.

This matter is before the Court on the cross-motions for summary judgment filed by the defendant RSW Holdings, L.L.C. d/b/a/ Vincent's Italian Cuisine ("RSW"),[1] the defendant HMO Louisiana, d/b/a Louisiana Blue Cross Health Plans ("HMO-LA"),[2] and plaintiff Michael Aucoin ("Aucoin").[3] On May 3, 2007, the Court held oral argument on these motions and took the matter under advisement.[4] For the reasons which follow, defendants' motions are granted, and plaintiff's motion is denied.

## I. Factual Background

Plaintiff Michael Aucoin was employed by RSW until his employment was voluntarily terminated on February 4, 2005. During the term of his employment, plaintiff was covered by a health insurance plan issued through RSW by HMOLA. In early March 2005, plaintiff's physician determined that he required a tonsillectomy. On March 7, 2005, HMOLA issued a precertification and approval for this surgery to plaintiff's physician and the hospital. After his surgery was performed, the plaintiff was advised by HMOLA that his coverage was retroactively terminated on March 1, 2005, when the Plan was terminated. Plaintiff then filed this suit against RSW and HMOLA, asserting various state law claims against RSW and claims against HMOLA under ERISA.

The Court previously granted RSW's motion for summary judgment as to the state law claims brought against it by the plaintiff, finding that all state law claims in this matter were preempted by ERISA.[5] All parties have now moved for summary judgment on the ERISA claims in this matter.

## II. Contentions of the Parties

The plaintiff contends both defendants had a fiduciary duty to plaintiff under the terms of the Plan and ERISA, which both defendants breached. Aucoin claims he attempted to obtain a continuation of coverage "form" from RSW on several occasions, but the form was never provided. Plaintiff also claims RSW owed a fiduciary duty to him because RSW is identified in the policy and pleadings as the plan administrator. Insofar as his claim against HMO LA is concerned, plaintiff claims he received a pre-certification letter from HMOLA prior to his surgery. Plaintiff contends he based his decision to have the surgery on this letter. Plaintiff also claims the original administrative record filed in this record did not contain any evidence of the pre-certification of plaintiff's procedure or evidence of the cancellation or termination of the policy. It is this evidence which provided the reasons for HMOLA to deny coverage in this case. Thus, plaintiff argues HMOLA breached its fiduciary duty to plaintiff by failing to honor the pre-certification letter, and abused its discretion in its denial of coverage since the administrative record did not contain evidence to support HMOLA's decision at the time of its review.

1. Rec. Doc. No. 36.

2. Rec. Doc. No. 31.

3. Rec. Doc. No. 26.

4. Rec. Doc. No. 52.

5. Rec. Doc. No. 34.

In its motion for summary judgment, RSW alleges the plaintiff made no payments to cover his insurance after he terminated his employment and did not request continuation of benefits in writing to RSW as required by the policy. Furthermore, RSW argues the plaintiff was not required to notify the Group [6] [RSW] of the request for continuation of coverage on any "form." [7] RSW also contends it had the right under the terms of the policy to discontinue premium payments once there were no longer any employees in the Group for which coverage was being provided under the Group Policy issued to RSW. Since the plaintiff was the last employee covered under the Group Plan, RSW discontinued premium payments with full knowledge that the Plan would subsequently terminate. Thus, RSW contends the plaintiff has no cause of action against it under ERISA, and summary judgment should be granted in RSW's favor on the ERISA claim.

HMOLA also moves for summary judgment, noting the pre-certification sent to plaintiff's physician on March 7, 2005, expressly stated that certification was based on medical necessity and did not guarantee payment of the proposed surgery. HMOLA further contends it had no knowledge that the plaintiff had voluntarily terminated his employment with RSW prior to the date of plaintiff's request for surgery. As previously noted, RSW did not pay the insurance premium on March 1, 2005, to maintain its health plan since its Group no longer existed after plaintiff left RSW's employment. On March 15, 2005, HMOLA advised RSW the Plan would retroactively terminate on March 1, 2005, for failure to pay premiums pursuant to Section XIX (G)(3) of the Plan.

In response to plaintiff's argument that the administrative record filed with the Court was not complete, HMOLA argues the original version of the administrative record contained the same information concerning pre-certification and cancellation of the policy, but the information was expressed in codes rather than correspondence form. Since the identical information plaintiff contends was not in the record was thoroughly considered by HMOLA in its review of plaintiff's claim, HMOLA is entitled to summary judgment as a matter of law under the facts of this case on the ERISA claim.

The Court now turns to a discussion of the relevant law and facts of this case.

## III. Law and Analysis

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [8] The Su-

---

**6.** "Group" is defined in the policy as: "Any company, partnership association, corporation or other legal entity which has made application for coverage herein and has agreed to comply with all the terms and requirements of the Contract." Rec. Doc. No. 21, Exhibit 1A, p. 13. For purposes of the policy at issue in this case, RSW is the "Group."

**7.** The policy provides: "A Subscriber must notify the Group *in writing* of his or her election to continue this Group health cover-

age and *must pay* any required contribution to the Group no later than the date on which coverage under the contract would otherwise end. A form providing notification of the Subscriber's election to continue his or her coverage *is available* from the Group." Rec. Doc. No. 21, Exhibit 1A, pp. 51–52 (emphasis added).

**8.** Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

preme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[10] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[11]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[12] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[13] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[14] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[16]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[17]

## B. Standard of Review for Denial of Benefits under ERISA

Under ERISA, when the language of an ERISA plan grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion.[18] In the summary judgment context, the ERISA administrator's decision must be supported by substantial evidence in the administra-

**9.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

**10.** *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25, 106 S.Ct. at 2552).

**11.** *Id.* at 1075.

**12.** *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

**13.** *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

**14.** *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

**15.** *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir.1995).

**16.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**17.** *Id.* at 248, 106 S.Ct. at 2510.

**18.** *High v. E–Systems, Inc.*, 459 F.3d 573 (5th Cir.2006); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir.1999).

tive record to avoid being reversed by the Court.[19] Substantial evidence is "that which a reasonable mind might accept as sufficient to support a conclusion." [20]

■ In determining whether a plan administrator abused discretion in denying benefits, the court applies a two-step analysis: first, the court must determine whether the administrator's decision was legally sound; second, if the administrator's decision was not legally sound, the court must determine if the decision was an abuse of discretion in any event.[21]

■ The plaintiff claims RSW is identified as the "plan administrator" in pleadings and in the policy at issue. Specifically, Article XIX (A)(2) does state in relevant part the following:

> To the extent that the Contract may be an employee welfare benefit plan as defined in the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, the Group [RSW] will be the administrator of such employee welfare benefit plan and will be solely responsible for meeting any obligations imposed by law or regulation on the administrator of the plan, **except those We specifically undertake herein.** (emphasis added).

Under section (A)(4) of the same Article, the discretionary authority to determine eligibility for benefits is assigned to HMOLA: "The Company has full discretionary authority to determine eligibility for Benefits and/or to construe the terms of the Contract." Thus, for purposes of ERISA, HMOLA is the "plan administrator" which has the authority to determine the plaintiff's eligibility for benefits. Therefore, it is HMOLA's denial of plaintiff's coverage which the Court will review for abuse of discretion.

## C. HMOLA did not abuse its discretion in denying coverage[22]

### 1. Retroactive Cancellation of the Policy

■ After examining all issues raised by the parties in this matter, the Court believes resolution of this case can be determined solely on one basis: the termination of the Plan. During the May hearing, counsel for HMOLA argued that whether RSW provided the form to the plaintiff and processed an election for continued coverage or not was irrelevant because under the policy, when the Plan terminates, continuation of coverage also terminates. Following this argument, *even if* RSW had provided plaintiff the requested form and processed his election for continuation of coverage, plaintiff's coverage still would have ended prior to plaintiff's surgery **since continuation coverage was dependent on the existence of the Plan.** Plaintiff's intent to convert to an individual policy—which would have become a new policy that survived the Plan—was unavailable because the Plan only provided for **group** employee coverage.

While the plaintiff might have elected continuation coverage following his voluntary termination, RSW still had the right under the policy to terminate the plan because RSW no longer had any employ-

**19.** *Id.* at 576; *Ellis v. Liberty Life Assurance Co.,* 394 F.3d 262, 273 (5th Cir.2004).

**20.** *Id.,* citing *Ellis,* 394 F.3d at 273.

**21.** *Id.* at 577, citing *Duhon v. Texaco,* 15 F.3d 1302, 1307 n. 3 (5th Cir.1994).

**22.** The plaintiff previously conceded that COBRA does not apply in this case since RSW meets the "small employer exemption" set forth in 29 U.S.C. § 1161(b). Thus, the employer's obligation to give notice of policy termination and the opportunity for conversion to an individual policy is not applicable in this case.

ees subject to group coverage. Likewise, under Article XIX (G)(3), HMOLA had the right to terminate the Plan retroactively for RSW's failure to pay premiums because it no longer had any employees in the Group. As counsel for HMOLA stated to the Court during oral argument, HMOLA would not have provided "group" coverage for one employee. Thus, plaintiff's coverage would have to be retroactively cancelled March 1, 2005, when RSW failed to pay premiums by March 15, 2005, regardless of plaintiff's election to continue coverage and regardless of any premium payments he might have personally submitted. For this reason, it is not necessary to consider the remaining issues before the Court because they are moot in light of the Court's decision to grant summary judgment as to both defendants.[23]

The applicable jurisprudence supports the Court's decision. In *Bitter v. Orthotic & Prosthetic Specialists,*[24] the plaintiff (Bitter) had voluntarily terminated his employment with O & P on April 20, 2004. On the same day, O & P faxed a termination report to Coventry, who provided group health insurance to O & P for its employees. The faxed termination report incorrectly stated that Bitter's termination date was February 27, 2004. This error was corrected, and Bitter contacted an in-dependent insurance agent in an effort to obtain continuation insurance.[25]

Around May 24, 2004, Bitter suffered a heart attack resulting in hospitalization and medical expenses in excess of $65,000. On that day, plaintiffs paid their insurance premium to Coventry, which was negotiated by Coventry on June 11, 2004. On July 2, 2004, Coventry retroactively terminated O & P's group coverage to February 29, 2004.[26]

Plaintiffs sued both O & P and Coventry, alleging Coventry was negligent and acted arbitrarily and capriciously by retroactively cancelling the group policy and permitting plaintiffs to believe they were insured in May of 2004. Coventry argued that under ERISA, the termination of O & P's group health insurance plan retroactive to February 29, 2004, for non-payment of premiums extinguished the plan beneficiary's right to continuous coverage as of that date.[27]

O & P argued it was excluded from federal laws requiring employees to extend COBRA continuation coverage under the small employer exemption of 29 U.S.C. § 1161(b). Further, O & P contended Coventry's retroactive cancellation was the cause of plaintiffs' damages.[28]

---

**23.** For these reasons, the Court believes it would not be in the interests of justice and judicial economy to devote a significant portion of this opinion to whether (1) the plaintiff properly complied with the plan in requesting the continuation of coverage; (2) RSW failed to give the form, whether the form itself was necessary; (3) RSW was the plan administrator for ERISA purposes; and (4) RSW had a fiduciary duty to Aucoin and breached that duty. However, the Court notes that it does find in the alternative that the plaintiff failed to properly elect continuation of coverage in any event by failing to comply with the clear terms of the Plan, which required notification of plaintiff's intent to RSW *in writing.* Article XIX (F)(2), relied upon by plaintiff's counsel in arguing the necessity of a "form," applies to the Group's (RSW) communication of employee personnel information to "Us" (HMOLA). This section does not indicate a former employee is required to use a specific "form" to elect continuation of coverage.

**24.** 2005 WL 2037458 (E.D.La. Aug.17, 2005).

**25.** *Id.* at * 1.

**26.** *Id.*

**27.** *Id.* at *1–2.

**28.** *Id.* at *2.

The *Bitter* court conceded that O & P was exempt from providing coverage under COBRA. The court held as follows:

> [E]ven if Plaintiff was permitted to elect a continuation of coverage, 29 U.S.C. § 1162(B) and (C) provides that the coverage must only extend from the date Plaintiff's employment terminated to the date on which the O & P ceased to provide a group health plan to any employee or the date on which coverage under the plan ceased because of failure to pay any premiums required under the plan.[29]

Bitter's employment ended on April 20, 2004, and coverage under the plan ceased to exist on February 29, 2004, for O & P's failure to pay premiums. Thus, the court held that under 29 U.S.C. § 1162(B) and (C), "Plaintiff was not entitled continuation of coverage past February 29, 2004."[30] The court further found that Coventry had acted in accordance with the terms of the Plan when it cancelled the policy for O & P's failure to make premium payments.[31]

*Richard v. Bankers United Life*, et al. also involved the retroactive cancellation of an insurance policy under an ERISA plan.[32] In *Richard*, the plaintiff was employed by Dixie and issued a healthcare insurance policy on August 1, 1989. The policy was issued by Bankers to Dixie as part of a group policy provided by Dixie to its employees. Bankers paid all medical expenses incurred by Richard through December 31, 1989. Dixie's group policy through Bankers was terminated effective January 1, 1990, because Dixie failed to pay the premiums. Plaintiff sued alleging that he was given no notice of this termination and was not provided the opportunity to continue his coverage.[33]

The court found that because Bankers had terminated the plan for failure to pay premiums, "Bankers had no obligation to pay the plaintiff's medical expenses after the termination date."[34] The court noted the plan provided that an employee's coverage would terminate "at 'the end of a period for which the last required premium payment is made for the Employee's insurance.'"[35] Thus, the court held that "Dixie's failure to continue premium payments to Bankers after December 31 served to automatically terminate the coverage to Dixie's employees under this policy."[36]

The *Richard* court quoted from a Fourth Circuit opinion which addressed the same issue as follows: "[C]ourts are not at liberty to disregard the plain language of a plan in order to demand that insurers provide coverage for which no premium has been—or ever will be—paid."[37]

Thus, the jurisprudence clearly holds as long as the insurer acts within its rights

---

29. *Id.* at * 3.

30. *Id.*

31. It should be noted that the *Bitter* court addressed plaintiffs' state law claims, several of which were also brought by the present plaintiff (Aucoin) but which this Court held were preempted by ERISA. There was no discussion of preemption in *Bitter*; however, the court held plaintiffs were not entitled to any recovery under the state law claims as well.

32. 1993 WL 99187 (E.D.La. Mar.30, 1993).

33. *Id.* at * 2.

34. *Id.*

35. *Id.*

36. *Id.*

37. *Id.* (quoting *Coleman v. Nationwide Life Insurance Company*, 969 F.2d 54, 57–58 (4th Cir.1992), *cert. denied*, 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993)).

under the clear terms of the Plan, retroactive termination of a Plan for failure to pay premiums will be upheld.

## 2. The Administrative Record

■ The plaintiff contends the plan administrator could not have considered the pre-certification and approval or the termination of the Plan in its review since the original administrative record contained no evidence of either document. Because HMOLA's denial is based on the information contained in these documents, plaintiff argues the plan administrator's decision is unsupported since these documents were not part of the administrative record at the time of the administrator's review.

HMOLA demonstrated at oral argument and the record reveals that the same information set forth in these two documents is present in the administrative record and was in fact reviewed by the plan administrator. Thus, HMOLA contends its decision is sufficiently supported by the original administrative record or the amended record since both contained relevant evidence sufficient to deny plaintiff's claim.

HMOLA also notes the pre-certification and approval sent to plaintiff's doctor before surgery clearly states: "this is not a guarantee of payment." Thus, HMOLA argues plaintiff could not completely rely on this document as a guarantee that the procedure would be covered. HMOLA contends the pre-certification was simply HMOLA's finding that the surgery was warranted based on the circumstances of plaintiff's health problems. Also, at the time of plaintiff's request HMOLA was unaware of the change in Aucoin's employment status and had no reason to know at that time that Aucoin was no longer covered under the Group Plan. Since RSW had until March 15 to default on the premium payments, HMOLA argues it could not have known on March 7, the date of the pre-certification and approval, that RSW would not pay the premiums and the policy would retroactively terminate on March 1, 2005.[38]

The Court finds plaintiff's argument to be without merit. HMOLA demonstrated during oral argument that the record contains the same information set forth in the documents plaintiff alleged were excluded from the administrative record although in a different format. Thus, the plan administrator clearly had knowledge of both the pre-certification of plaintiff's surgery and the retroactive cancellation of the policy at the time of the denial. The Court finds that the administrator's decision is supported by substantial evidence in the administrative record, and there was no abuse of discretion since the plan administrator's decision was legally correct under the jurisprudence and facts of this case.

## IV. Conclusion

For the reasons set forth above,

IT IS ORDERED that the motions for summary judgment of RSW and HMOLA are granted.

---

**38.** "As to the pre-certification letter, logically HMOLA could not have known on March 7 that the employer would not pay premiums for Aucoin's coverage. That is one of several reasons why the precertficiation letter does not guarantee payment." Rec. Doc. No. 32, p. 3. This is one of several facts which reveals plaintiff's reliance on *Willett v. Blue Cross and Blue Shield of Alabama*, 953 F.2d 1335 (11th Cir.1992), is misplaced. In *Willett*, the Eleventh Circuit held that Blue Cross could be held liable as a co-fiduciary under 29 U.S.C. § 1105 if plaintiffs could establish that Blue Cross was aware of the employer's breach of fiduciary duty and failed to take reasonable steps to remedy such breach, or Blue Cross knowingly concealed or participated in the employer's breach of the duty. The facts of this case and those in *Willett* are so dissimilar, no significant discussion of the *Willett* case is warranted in this opinion.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.

Judgment shall be entered accordingly.

IT IS SO ORDERED.